In re Delwin J. WALKER and Billie Janiece Walker, Debtors.

L.D. FITZGERALD, Trustee, Plaintiff/Appellee,

v.

FIRST SECURITY BANK OF IDAHO, Defendant/Appellant.

No. CV 93–0498–E–EJL.
Bankruptcy No. 92–02863–7.
Adv. No. 93–6020.

United States District Court, D. Idaho.

Oct. 26, 1994.

Craig W. Christensen, Craig W. Christensen, Chartered, Pocatello, ID, for First Sec. Bank of Idaho.

Jim Spinner, Service, Gasser & Kerl, Pocatello, ID, for L.D. Fitzgerald, Trustee.

## MEMORANDUM DECISION ON APPEAL

LODGE, Chief Judge.

First Security Bank of Idaho, N.A., has filed this appeal from the final judgment entered by the Bankruptcy Court in favor of L.D. Fitzgerald, Trustee ("the Trustee"), and which deemed the Bank's lien in the 1989 Ford Taurus to be void under 11 U.S.C. § 547(b) of the United States Bankruptcy laws. By permission of this court, the Idaho Automobile Dealers Association participated in the appeal as amicus curie. For the reasons set forth below, this court affirms the judgment of the Bankruptcy Court.

### Facts and Procedural Background

The undisputed facts in this case, as set forth in the Bankruptcy Court's memorandum decision, may be briefly summarized as follows. On July 3, 1992, Debtors Delwin and Janiece Walker ("the Debtors") purchased a 1989 Ford Taurus from Ted's, Inc., a Pocatello auto dealer. In connection with that purchase, Debtors executed an Installment Sale Contract, Security and Disclosure Agreement. In that contract, the Debtors granted a security interest in the vehicle to Ted's to secure the payment of the $9,042.18 balance of the purchase price they agreed to finance.

On that same day, the Debtor's took physical possession of the vehicle. Also on July 3, Ted's, Inc., executed an assignment on the back of the contract and transferred all of its right, title, and interest under the contract without recourse to the Appellant, First Security Bank of Idaho N.A. ("the Bank"). As evidenced by the motor vehicle title, the Bank's lien was recorded on July 17, 1992.

The Debtors stopped making payments and, on September 2, 1992, filed for Chapter 7 bankruptcy. The vehicle was later surrendered to the Trustee, who sold it at an auction. The Trustee then filed an adversarial proceeding to avoid the Debtor's transfer of the security interest pursuant to 11 U.S.C. § 547(b). Opposing the Trustee, the Bank argued that the transfer was excepted from the Trustee's avoidance powers under the "enabling loan" provisions of 11 U.S.C. § 547(c)(3). The Bankruptcy Court ultimately held in favor of the Trustee, concluding that the transfer was an avoidable preference, and invalidated the Bank's security interest. This appeal followed.

The sole issue raised on appeal is whether the security interest taken by the Bank in the Debtor's motor vehicle constitutes a voidable preference under 11 U.S.C. § 547(b), or whether it is excepted from voidance under 11 U.S.C. § 547(c)(3). Specifically, the appellants argue that the Bankruptcy Court erroneously concluded that the ten-day grace period contained in Section 547 of the Code provides the exclusive time frame within which a security interest can be perfected for purposes of the Section's preference provisions. Because resolution of this issue presents a question of statutory interpretation, this court exercises de novo review. Bankruptcy Rule 8013; *Guillory v. County of Orange*, 731 F.2d 1379 (9th Cir. 1984); *In re Hooper*, 112 B.R. 1009 (9th Cir. BAP 1990); *see also In re Busenlehner*, 918 F.2d 928 (11th Cir.1990).

Having fully reviewed the record herein in preparation for the hearing, the court finds that the facts and legal arguments are ade-

quately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this court without oral argument. Local Rule 7.1(b).

### Analysis

■ A transfer of a security interest made on account of any antecedent debt is avoidable in bankruptcy by a trustee as a preference. 11 U.S.C. § 547(b)(2). Thus, in order to claim an avoidable preference, the Trustee must show that *the transfer* of the security interest took place after the creation of the Debtors' obligation to finance the purchase of the vehicle.

However, under the Section's enabling loan exception, purchase money security interests are excepted from avoidance *if* the creditor (in this case, the Bank) demonstrates that *the transfer* of the security interest was "perfected on or before 20 days after the debtor receives possession of such property." 11 U.S.C. § 547(c)(3)(B).

Therefore, whether a transfer is avoidable by the Trustee or is excepted from avoidance depends on when, for preference purposes, the "transfer" of the security interest from the Debtors to the Bank occurred.

Of pivotal importance in this case is the ten-day "grace period" provided in Section 547(e). That Section provides that a transfer is deemed made at the time it takes effect between the parties *if* it is perfected within ten days thereafter. 11 U.S.C. § 547(e)(2)(A). If not perfected within ten days, the transfer is deemed to have occurred when it is perfected. 11 U.S.C. § 547(e)(2)(B).

The effect of this so-called "grace period" on the Trustee's claim for avoidance as a preference, *see* 11 U.S.C. § 547(b)(2), was aptly explained by the Bankruptcy Court:

> If the creation of the debt occurred at the same time the transfer took effect between the parties, perfection within the [ten-day] grace period will insulate the transfer from avoidance because the statute will regard the transfer as having occurred simulta-

neously with the creation of the underlying debt. In other words, no preference can be shown to have occurred because there will not be a transfer on account of an antecedent debt.

Memorandum of Decision, at 9.

The statute operates similarly in construing the enabling loan exception to avoidance. Quoting again from the Bankruptcy Court:

> In order for the statute to apply, the transfer must be perfected within ten days of the date the debtor receives possession of the collateral. 11 U.S.C. § 547(c)(3)(B). In a situation where a debtor does not receive possession of the property at the time the security agreement is executed, for example, a transfer may still be protected from avoidance if it is perfected more than ten days after the effective date of the security agreement, so long as the perfection date is not more than ten days from the date of the debtor's taking possession of the property.

Memorandum of Decision, at 9–10.

In this case, it is undisputed that the Debtors received the vehicle on the day they signed the contract, July 3, 1992. Therefore, if the transfer of the security interest was "perfected" within ten days of that date, the Bank's security interest is unavoidable under both statutes. The dispositive question then, as aptly framed by the Bankruptcy Court, is as follows: At what point in time was the transfer of the security interest in the vehicle granted by Debtors to the Bank "perfected" within the meaning of Section 547 of the Bankruptcy Code?

■ In this case, the Bank's security interest in the Debtor's vehicle was created on July 3, 1992. Under Idaho law, perfection occurs when the filing process defined in Idaho Code § 49–510 is completed. Here, that process was complete as of July 17, 1992, more than ten days after the security interest was created, and more than ten days after the transfer. Consequently, pursuant to the provisions of Section 547, the Bank could not avail itself of the protections of the Code's enabling loan exception, 11 U.S.C. § 547(c)(3), and the Trustee was permitted to

avoid the lien as a preference under 11 U.S.C. § 547(b).

Dissatisfied with this result, the appellants have strenuously argued that the Bank should be entitled to the thirty-day grace period provided under Idaho law. *See* Idaho Code § 49–510 *as amended* by 1992 Idaho Sess.Laws ch. 143, p. 1. Having considered their arguments, however, the court is not persuaded.

■ As properly concluded by the bankruptcy judge, the appeal does not involve a conflict between state and federal laws, but instead turns upon the interpretation of specific provisions of Section 547 of the Bankruptcy Code. More particularly, the case requires that the court ascertain the intended meaning of the language contained in Sections 547(c)(3) and 547(e)(2), wherein Congress sought to measure the rights of a creditor based on the time its security interest is "perfected."

Defending the decision and judgment of the Bankruptcy Court, the Trustee takes the position that term "perfected" was properly construed to refer to an *act,* (i.e., the transferee "perfected" the security interest on July 17, 1992, by completing the filing process). The Bank, on the other hand, argues that the term refers to the *status* of the transferee's interest in the property (i.e., the creditor's security interest is "perfected" as of July 3, 1992, as a result of compliance with the state statute.)

Having reviewed the conflicting authorities on the subject, and having considered the arguments presented by the Trustee, the Bank, and the Automobile Dealers Association, the court is convinced that the Bankruptcy Court correctly interpreted the term "perfected" to refer to an act, rather than to the status of being perfected.

■ In reaching this decision, the court concludes, as did the bankruptcy judge, that the "plain meaning" of the term cannot be derived from the statute alone, and that both meanings are reasonable. It therefore is the court's task to discern the congressionally-intended meaning by resort to sources other than the Code. *See Dewsnup v. Timm,* 502

U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

The court also considered an historical examination of the Code undertaken in *In re Burnette,* 14 B.R. 795 (Bankr.E.D.Tenn. 1981). There, the bankruptcy court summarized its conclusions as to Congressional intent as follows:

It is evident that Congress did not intend for state grace periods to be relevant under the preference statute. There was to be a uniform rule throughout the nation. In any jurisdiction a transferee was to have only ten days to perfect a transfer and thereby avoid the antecedent debt problem. Ten days was picked apparently because it corresponded to state law, but Congress did not specifically refer to grace periods under state law.

14 B.R. at 801.

*Burnette* additionally outlined the fact that a federal grace period for perfection of transfers had been a feature of the Bankruptcy Act prior to the enactment of the 1978 Code. 14 B.R. at 798. As noted by the Bankruptcy Court in this case, absent an indication by Congress to the contrary, the courts are to assume that accepted established practices under pre-Code law have continued vitality, and supplement the provisions of the Code. *Dewsnup,* 502 U.S. at 419, 112 S.Ct. at 779.

■ This court concludes, as did the Bankruptcy Court below, that the history of the Code and the pre-Code practices under the Act indicate an intent on the part of Congress that the ten-day grace period set forth in Section 547, and not the various state-law grace periods, shall apply.

### Conclusion

Based upon the foregoing, and having been fully advised in the premises, the court hereby **AFFIRMS** the judgment entered by the Bankruptcy Court.