Regina WARSHAW and John D. Kaufman, on behalf of themselves and all others similarly situated, Plaintiff,

v.

XOMA CORPORATION and Steven C. Mendell, Defendants.

No. C–92–2264 SAW.

United States District Court, N.D. California.

June 23, 1994.

Irving Malchman and Nadeem Faruqi, Kaufman, Malchman, Kirby & Squire, New York City, for plaintiff.

Latham & Watkins, Paul Dawes, Leslie Marden, San Francisco, CA, and Cahill, Gordon & Reindel, New York City, for defendants.

### *MEMORANDUM AND ORDER*

WEIGEL, District Judge.

I. *BACKGROUND.*

Defendant Xoma Corporation ("Xoma") is a Delaware corporation with its principal offices in Berkeley, California. Xoma develops and produces protein therapeutic products using DNA technologies. Plaintiffs propose to represent a class of all persons who purchased Xoma common stock between March 2, 1992, and June 3, 1992, inclusive.

Throughout the relevant period, Defendant Steven C. Mendell was Chairman of Xoma's Board of Directors.

Plaintiffs claim that during the class period, Defendants made several misleading statements regarding E5, a drug developed by Xoma.[1] The allegedly misleading statements concerned the imminence of E5's approval by the Food and Drug Administration ("FDA"). Plaintiffs allege that as a result of Defendants' statements, the market price for Xoma stock was artificially inflated during the class period, reaching a high closing bid price of $22¼ per share. When the FDA refused to approve E5 on June 4, 1992, the price of Xoma stock dropped 4 and ¾ points—or 24%—to close at 15¼ per share.

On June 17, 1992, Plaintiffs filed a complaint, alleging that Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j ("Section 10(b)"), and 17 C.F.R. § 240.10b–5 ("Rule 10b–5"), promulgated under Section 10(b). On October 6, 1992, the Court dismissed Plaintiffs' complaint for failure to plead fraud with particu-

larity and for failure to properly allege scienter. On April 1, 1993, the Court dismissed Plaintiffs' first amended complaint on similar grounds. On October 28, 1993, the Court granted Plaintiffs leave to file a third amended complaint, rendering Defendants' motion to dismiss Plaintiffs' second amended complaint moot.

Defendants now attack Plaintiffs' third amended complaint. Defendants move to dismiss Plaintiffs' federal securities claims under Rule 12(b)(6) for failure to state a claim, and under Rule 9(b) for failure to adequately plead scienter. Defendants also move to dismiss Plaintiffs' newly inserted state law causes of action for fraud and negligent misrepresentation under Rule 12(b)(6).[2] Defendants further move to impose sanctions under Rule 11.

## II. DISCUSSION.

### A. Defendants' Motion to Dismiss under Rule 12(b)(6).

Dismissal under Rule 12(b)(6) is appropriate when "it appears beyond doubt that the

---

1. Plaintiffs allege that the following statements by Defendants were misleading:

   a. On 3–2–92, Patrick J. Scannon, then-President of Xoma, responded to an analyst's report critical of E5 by claiming it was "scientifically wrong." Scannon added that "everything is going fine" in the FDA's review of E5.

   b. On 4–14–92, Xoma issued a Press Release, stating that the FDA had concluded that the first Phase III trials were insufficient for approval of E5, but that active review of the second Phase III trials continued. The Press Release also said that all data had been submitted to the FDA and that Xoma was working closely with the FDA.

   c. On 4–14–92, Xoma issued a second Press Release, stating that the FDA decision was a confirmation of the FDA's previously-disclosed conclusion that the first Phase III trials were insufficient. It was not a signal of newly-discovered problems. The Press Release also said that Xoma continued to believe that the two trials combined showed effectiveness, and that the FDA notification was not a setback in the review process.

   d. Also on 4–14–92, Steven C. Mendell, stated that he believed that the FDA notification was a sign that the FDA was moving forward with E5.

   e. On 4–15–92, Mendell stated that Xoma was still confident that E5 was safe and was moving forward in the FDA process.

   f. On 4–28–92, Xoma issued a Press Release claiming that Xoma was on the threshold of becoming an integrated pharmaceutical company.

   g. On 5–5–92, Mendell was quoted as saying that the trials showed "a statistically significant decrease in mortality;" that Xoma was still convinced that E5 was safe; that no information was outstanding with the FDA; and that Xoma believed that the drug would move through the FDA.

   Plaintiffs also allege that Defendants improperly failed to correct statements made by third parties, namely:

   a. On 3–2–92, Casdin reported that according to "reliable sources," Xoma was "supremely confident of receiving approval for ... E5 in the near future."

   b. On 4–29–92, the Oakland Tribune quoted Jim McCamant, editor of the Medical Technology Stock Letter, as saying that Xoma was "maturing as they gear up for commercialization."

   c. On 4–30–92, the Sacramento Bee reported that Xoma expected E5 "to be approved by September."

   d. On 5–15–92, CNBC broadcaster Daniel Dorfman reported that analyst Jay Silverman was expecting FDA approval "in the current quarter."

   e. On 5–20–92, Dorfman reported that analyst Stover expected E5 to be approved "this year, possibly by the summer."

2. Plaintiffs reassert their state law causes of action in light of the recent California Supreme Court decision, *Mirkin v. Wasserman*, 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993).

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989). In evaluating a motion to dismiss, a court must construe the complaint in the light most favorable to plaintiff. *Russell v. Landrieu,* 621 F.2d 1037, 1039 (9th Cir.1980).

### 1. *Federal Securities Claims.*

■ To state a claim under the federal securities laws, a plaintiff must set forth specific misrepresentations; an allegation that taken together defendants' statements create a misleading impression will not suffice. *See In re Rasterops Corp. Securities Litigation,* [1992–93] Fed.Sec.L.Rep. (CCH) ¶ 97,445, at 96,487, 1993 WL 183510 (N.D.Cal.1993); *In re Syntex Corp. Securities Litigation,* Fed.Sec.L.Rep. (CCH) ¶ 97,-747, at 97,568–569, 1993 WL 476646 (N.D.Cal.1993). Moreover, statements of general optimism accompanied by historical fact are not actionable. *In re Verifone,* 784 F.Supp. 1471, 1481 (N.D.Cal.1992) (citing *In re Convergent Technologies,* 948 F.2d 507, 513 (9th Cir.1991)). Further, a plaintiff may not reasonably rely on an implication which is directly contradicted by an express disclaimer. *See, e.g., Sable v. Southmark/Envicon Capital Corp.,* 819 F.Supp. 324, 339 (S.D.N.Y.1993); *see also, McGonigle v. Combs,* 968 F.2d 810, 816–17 (9th Cir.1992).

■ Plaintiffs do not allege that any of Defendants' statements are false. Rather, Plaintiffs contend that the statements are misleading because they imply that FDA approval is imminent. However, Plaintiffs do not point to a single instance where Defendants speculated on when FDA approval might come. Plaintiffs rely exclusively on statements of general optimism, without alleging any basis for inferring that Defendants did not genuinely believe, or had no reason to believe, their optimistic statements. Given that the results of the two Phase III trials were publicly available, and Defendants repeatedly disclaimed any ability to predict the actions of the FDA, Plaintiffs fail to state a claim under the federal securities laws.[3]

■ As an alternative basis for liability, Plaintiffs allege that Defendants had an obligation to correct statements made by third parties. This theory is similarly unavailing to Plaintiffs. "The securities laws require [a company] to speak truthfully to investors; they do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to [the company]." *Raab v. General Physics Corp.,* 4 F.3d 286, 288 (4th Cir.1993); *see also, In re Caere Corporate Securities Litigation,* 837 F.Supp. 1054, 1058–61 (N.D.Cal.1993). In order to impose liability for the statement of a third party, a plaintiff must demonstrate that an insider adopted the statement, and that the insider knew that the analyst's forecasts were unreasonable when made, but failed to disclose their unreasonableness to investors. *Id.* at 1059.

None of the third party statements upon which Plaintiffs rely is directly attributed to Defendants. Moreover, Plaintiffs do not allege any basis for concluding that Defendants adopted any of the third party statements as their own.

Accordingly, Defendants' motion to dismiss Plaintiff's federal securities claims must be granted.[4]

---

**3.** Defendants' express disclaimers include:

a. 1991 10–K at 10 ("... it is not possible to predict at what point, or whether, the FDA will be satisfied with the Company's submissions ...")

b. 9–30–91 10–Q at 8 (same).

c. 3–31–92 10–Q at 6 (same).

d. 4–14–92 Reuters ("Mendell declined to speculate if or when the drug would be approved by the agency.")

e. 4–29–92 Oakland Tribune ("DeGuzman said she could not speculate on when Xoma might begin marketing the treatments.")

f. 5–5–92 Dow Jones News/Retrieval ("Mendell didn't speculate on when approval might come....")

g. 5–15–92 Reuters ("Mendell declined to speculate on if and when the drugs will be approved.")

**4.** The Court need not reach Defendants' Motion to Dismiss under Rule 9(b) because Plaintiffs' federal securities claims do not survive Rule 12(b)(6).

### 2. *State Law Causes of Action.*

■ Plaintiffs also attempt to state claims for fraud and negligent misrepresentation under California Civil Code § 1709, and common law. In order to state a claim for fraud or misrepresentation, a plaintiff must allege that a defendant made a false representation as to a material fact. *Reed v. King*, 145 Cal.App.3d 261, 264, 193 Cal.Rptr. 130 (1983); *Tarmann v. State Farm Mutual Automobile Ins. Co.*, 2 Cal.App.4th 153, 158, 2 Cal. Rptr.2d 861 (1991).

■ Here, Plaintiffs do not allege that Defendants made a false representation as to a material fact. Moreover, Plaintiffs do not allege any basis for concluding that Defendants were the source of the third party statements or that Defendants adopted the third party statements as their own.

Accordingly, Defendants' motion to dismiss Plaintiffs' state law claims for fraud and negligent misrepresentation must be granted.

### B. Defendants' Motion for Sanctions under Rule 11.

■ Under Rule 11, an attorney or party who signs a pleading, motion or other paper, represents to the Court that the document is "well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law, and that it is not imposed for any improper purpose, such as to harass, cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11. A Court is required to impose sanctions if a paper is signed in violation of Rule 11. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536, 1540 (9th Cir.1986). However, Rule 11 is an extraordinary remedy that should be used with extreme caution. *Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir.1992).

Defendants essentially claim that Plaintiffs should be penalized because many of the allegations contained in the complaint are either groundless or misleading. However, Defendants do not cite any particular con-

duct by Plaintiffs which warrants the imposition of Rule 11 sanctions. Accordingly, Defendants' motion for Rule 11 sanctions must be denied.

Plaintiffs fail to plead misrepresentations that are actionable under the federal securities laws or state tort law. Absent such pleading, Plaintiffs are not entitled to discovery.[5] Any further amendment would be futile. Accordingly, IT IS HEREBY ORDERED that Plaintiffs' third amended complaint is DISMISSED WITH PREJUDICE.

---

5. *See, e.g., In re Syntex Corp. Securities Litigation*, Fed.Sec.L.Rep. (CCH) ¶ 97,747, at 97,568, 1993 WL 476646 (N.D.Cal.1993).